1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**
7                         **DISTRICT OF NEVADA**
8
9    MICHAEL JOHN MOE,
10        Petitioner,                          3:14-cv-00410-RCJ-WGC
11   vs.
                                               **ORDER**
12   JO GENTRY, *et al.*,
13        Respondents.
14   _____/
15
16   Introduction
17        This action is a *pro se* petition for writ of habeas corpus by Michael John Moe, a Nevada
18   prisoner.  The action is before the Court with respect to the merits of Moe's petition.  The Court will
19   deny the petition.
20   Substitution of Respondent
21        Moe is incarcerated at Nevada's Southern Desert Correctional Center (SDCC).  Jo Gentry is
22   the warden of SDCC.  Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Jo Gentry is
23   substituted for Brian E. Williams, Sr., as the respondent warden in this action.
24   Background
25        On May 22, 2009, Moe was convicted, in Nevada's Second Judicial District Court, in
26   Washoe County Nevada, pursuant to a jury verdict, of one count of burglary.  *See* Judgment,

Exhibit 39. (The exhibits referred to in this order were filed by respondents, and are located in the record at ECF Nos. 8, 9, 10, 11, 12, and 13.) Moe was adjudicated an habitual criminal, under NRS 207.010, and he was sentenced to 25 years in prison, with the possibility of parole after 10 years. *See* Judgment, Exhibit 39 (ECF No. 9-13)

The trial was held on April 6, 2009. *See* Trial Transcript, Exhibit 23 (ECF No. 8-23). Evidence at trial showed that Moe committed a burglary at a Cabela's sporting goods store, and shoplifted items from that store.

The first to testify at Moe's trial was Scott Thomas Catron, who was employed by Cabela's as a loss prevention specialist. *See* Testimony of Scott Thomas Catron, Trial Transcript, Exhibit 23, pp. 99-220 (ECF No. 8-23, pp. 100-221). Catron testified that on November 20, 2008, he saw Moe in the Cabela's store. *See id*. at 108, 117, 119 (ECF No. 8-23, pp. 109, 118). Catron saw Moe with a Garmin GPS device, which he placed in a basket and covered with a shirt. *See id*. at 119-20 (ECF No. 8-23, pp. 120-21). Catron then began to watch Moe on a security camera. *See id*. at 121-22 (ECF No. 8-23, pp. 122-23). Catron thought that Moe did not seem to be shopping. *See id*. Catron then saw Moe bend down, and stand back up, and do something in his jacket pocket with his hands -- "fighting with something inside his jacket." *See id*. at 122-24, 126 (ECF No. 8-23, pp. 123-25, 127). Catron believed that Moe had moved the Garmin GPS device from the basket to his jacket pocket. *See id*. at 150, 216 (ECF No. 8-23, pp. 151, 217). Moe then wandered to the video game section of the store, where he selected some video games. *See id*. at 124-25 (ECF No. 8-23, pp. 125-26). Catron then saw Moe move toward a section of the store with camouflage clothing, where he left the "spider wrap" from the Garmin GPS device. *See id*. at 127, 213 (ECF No. 8-23, pp. 128, 214). "Spider wrap" is a security device that is attached to a product. *See id*. at 114-15 (ECF No. 8-23, pp. 115-16). Catron had another employee, Jeff Duncan, go out on the store floor and retrieve the spider wrap that Moe left in the camouflage clothing section. *See id*. at 127, 159 (ECF No. 8-23, pp. 128, 160). Catron then saw Moe move toward the front of the store, but veer off toward a restroom near the store entrance. *See id*. at 125, 127-28, 166 (ECF No. 8-23, pp. 126, 128-29, 167). Moe

went into the restroom, and stayed in there for about half an hour. *See id.* at 128 (ECF No. 8-23, p. 129). Catron then had another employee, Burl Sutter, go into the restroom and remove all the trash, so that Catron could later tell what trash Moe left in the restroom. *See id.* at 129, 166-70 (ECF No. 8-23, pp. 130, 167-71). Sutter went into the restroom and checked the trash several times while Moe was inside. *See id.* at 129-30, 166-70 (ECF No. 8-23, pp. 130-31, 167-71). Sutter retrieved from the restroom a Garmin GPS device box. *See id.* at 130-31, 170-71 (ECF No. 8-23, pp. 131-32, 171-72). When Moe eventually came out of the restroom, Catron saw him go back into the store area. *See id.* at 131 (ECF No. 8-23, p. 132). Catron noticed Moe watching the front entrance. *See id.* at 132, 171-72 (ECF No. 8-23, pp. 133, 172-73). Catron then testified as follows:

> Q.     And eventually does he walk outdoor?
>
> A.     He does, he makes some more -- a movement throughout the apparel department. At one point in time he takes the Garmin from -- one pocket and placing it in another pocket, stops and looks up at a camera, and then kind of just stands and watches the front of the store and then starts to head towards the front of the building through the standard exit would be if you pay for merchandise through the clothes checkout lanes.
>
> Q.     Then he walks out the doors and the Reno Police Department is actually already there; is that right?
>
> A.     They are there, yes.

*Id.* at 132 (ECF No. 8-23, p. 133). Catron had called the police. *See id.* at 132-34 (ECF No. 8-23, pp. 133-35). Moe was arrested. *See id.* at 134 (ECF No. 8-23, p. 135). When he was arrested, Moe had in his possession four video games and the Garmin GPS device. *See id.* at 134, 153, 173-75 (ECF No. 8-23, pp. 135, 154, 174-76). The Garmin GPS device was, at that point, not in a box. *See id.* at 134-35 (ECF No. 8-23, pp. 135-36). During Catron's testimony, the prosecution played for the jury a surveillance video showing Moe in the Cabela's store, and his arrest outside, and showed the jury a photo of the items Moe took from the store. *See id.* at 137-43, 148-74 (ECF No. 8-23, pp. 138-44, 149-75). Catron testified that the total value of the items that Moe took from the store was about $350. *See id.* at 175-76 (ECF No. 8-23, pp. 176-77).

Next to testify was Jeffrey Paul Duncan, another Cabela's loss prevention employee. *See* Testimony of Jeffrey Paul Duncan, Trial Transcript, Exhibit 23, pp. 221-39 (ECF No. 8-23, pp. 222-240). Duncan testified that on November 20, 2008, he assisted Catron in watching Moe on the store's security cameras. *See id*. at 222 (ECF No. 8-23, p. 223). Duncan testified that at some point, Catron asked him to go out onto the floor and retrieve a security device that Moe had discarded there; Duncan found the "spider wrap" security device in the pocket of a piece of camouflage clothing where Catron believed Moe had left it. *See id*. at 223-24 (ECF No. 8-23, pp. 224-25).

The prosecution's last witness was David Robertson, a police officer with the Reno Police Department. *See* Testimony of David Robertson, Trial Transcript, Exhibit 23, pp. 240-71 (ECF No. 8-23, pp. 241-272). Officer Robertson responded to the Cabela's store on November 20, 2008, and participated in apprehending Moe as he exited the store. *See id*. at 242-45 (ECF No. 8-23, pp. 243-46). Officer Robertson testified that Moe was searched, and the police found that he had items from the store concealed under his jacket. *See id*. at 246 (ECF No. 8-23, p. 247). The police found that Moe had only three pennies in his possession, and no other cash, credit cards, or checks. *See id*. at 247 (ECF No. 8-23, p. 248). Officer Robertson testified as follows about statements made by Moe:

> Q.     [...] [D]id you ask or did the defendant make a spontaneous statement about what his intention was inside the store, what he was doing there?
>
> A.     He was there to remove items from the store.
>
> Q.     Did he state that he had any way to pay for those items?
>
> A.     I don't recall if he -- if he said that he had a means of payment.
>
> *         *         *
>
> Q.     And when you spoke to the defendant on November 20th of 2008 inside the store at Cabela's after he had stolen this property, he stated to you that he went there to steal it?
>
> A.     Yes.

*Id*. at 250, 255 (ECF No. 8-23, pp. 251, 256).

The defense called defense investigator Evo Novak as a witness. *See* Testimony of Evo Novak, Trial Transcript, Exhibit 23, pp. 272-82 (ECF No. 8-23, pp. 273-83). Novak testified that he viewed the surveillance video from Cabela's, and he testified about his observations regarding that video. *See id*. at 273-74 (ECF No. 8-23, pp. 274-75). He also testified about going to Cabela's and taking photographs of certain items as part of the defense investigation. *See id*. at 274-77 (ECF No. 8-23, pp. 275-78).

The jury found Moe guilty of burglary. *See* Trial Transcript, Exhibit 23, pp. 304-06 (ECF No. 8-23, pp. 305-07); Verdict, Exhibit 25 (ECF No. 8-25).

Moe filed a motion for a new trial, based on the trial court's denial of a challenge for cause of a prospective juror; however, the prospective juror had been challenged by the defense, using a peremptory challenge, and did not serve on the jury. *See* Motion for New Trial, Exhibit 27 (ECF No. 9-1). The court denied that motion. *See* Order, Exhibit 33 (ECF No. 9-7).

On April 30, 2009, the State filed a notice of its intent to seek an habitual criminal sentencing enhancement. *See* Notice of Intent to Seek Habitual Criminal Enhancement, Exhibit 32 (ECF No. 9-6). In that notice, the State listed seven prior felony convictions. *See id*.

Moe's sentencing was held on May 22, 2009. *See* Transcript of Sentencing, Exhibit 38 (ECF No. 9-12). He was adjudicated an habitual criminal under NRS 207.010, and was sentenced to 25 years in prison, with the possibility of parole after 10 years. *See id*. at 60 (ECF No. 9-12, p. 61); Judgment, Exhibit 39 (ECF No. 9-13).

Moe appealed, and the Nevada Supreme Court affirmed Moe's judgment of conviction on November 5, 2009. *See* Order of Affirmance, Exhibit 55 (ECF No. 10-4).

On April 21, 2010, Moe filed a post-conviction petition for writ of habeas corpus in the state district court. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit 60 (ECF No. 10-9). After counsel was appointed for him, Moe filed a supplemental petition on August 7, 2011. *See* Supplemental Petition for Writ of Habeas Corpus, Exhibit 88 (ECF No. 11-12). Moe subsequently amended his petition. *See* Motion for Leave to Amend, Exhibit 109 (ECF No. 12-8);

Order Granting Motion for Leave to Amend, Exhibit 117 (ECF No. 12-16).  On January 8, 2013, the state district court held an evidentiary hearing.  *See* Transcript of Evidentiary Hearing, Exhibit 121 (ECF No. 12-20).  The state district court denied Moe's petition in a written order on April 8, 2013.  *See* Findings of Fact, Conclusions of Law and Judgment, Exhibit 124 (ECF No. 12-23).  Moe appealed.  On September 18, 2013, the Nevada Supreme Court affirmed the denial of Moe's petition.  *See* Order of Affirmance, Exhibit 138 (ECF No. 13-12).

This court received Moe's *pro se* federal habeas corpus petition on August 6, 2014.  *See* Petition for Writ of Habeas Corpus (ECF No. 4).  Moe's federal habeas petition includes 44 grounds for relief, some with several subparts.  *See id*.

On February 17, 2015, respondents filed a motion to dismiss, contending that all Moe's claims are unexhausted in state court.  *See* Motion to Dismiss (ECF No. 7).  Respondents also argued that all Moe's claims are conclusory and that some of his claims are not cognizable in a federal habeas action.  *See id*.  The Court ruled on the motion to dismiss on June 25, 2015, granting it in part and denying it in part.  *See* Order entered June 25, 2015 (ECF No. 20).  The Court ruled that the following of Moe's claims were exhausted in state court:

> Ground 20 (to the extent based on trial counsel's alleged failure to investigate witnesses Donnelly, Duncan and Catron);
>
> Ground 24(2) (to the extent based on trial counsel's alleged failure to call Pam Metzger to testify);
>
> Ground 24(3) (to the extent based on trial counsel's alleged failure to encourage Moe to testify at trial);
>
> Ground 24(9) (to the extent based on trial counsel's alleged failure to investigate witnesses Donnelly, Duncan and Catron);
>
> Ground 24(16) (to the extent based on trial counsel's alleged failure to offer at trial, as evidence, "the advertisement flyer showing sale jackets from Cabela's store and [the receipt from] Metzger's gambling tournament at Boomtown");
>
> Ground 24(21) (to the extent based on trial counsel's alleged failure to "investigate the prosecutor's hearsay remarks regarding Game Stop contacting Cabela's about Pam Metzger selling videotapes stolen by Moe");

Ground 24(22) (to the extent based on trial counsel's alleged failure to object to "the prosecutor's hearsay remarks regarding Game Stop contacting Cabela's about Pam Metzger selling videotapes stolen by Moe," and to offer evidence that one of his prior convictions was the result of a trial at which he was not present);

Ground 24(23) (to the extent based on trial counsel's alleged failure to object to "the prosecutor's hearsay remarks regarding Game Stop contacting Cabela's about Pam Metzger selling videotapes stolen by Moe");

Ground 24(24) (to the extent based on trial counsel's alleged failure to object to "the prosecutor's hearsay remarks regarding Game Stop contacting Cabela's about Pam Metzger selling videotapes stolen by Moe");

Ground 24(26) (to the extent based on trial counsel's alleged failure to object "when the court ordered there were sixteen minutes left to finish the jury trial after the State's case");

Ground 24(32) (to the extent based on trial counsel's alleged failure to play "the videotape from Cabela's security office to impeach Officer David Robertson's supplemental report," and to cross-examine Donnelly, Duncan, and Catron); and

Ground 25 (to the extent of Moe's other exhausted claims).

*See id.* The court ruled the following claims in petitioner's habeas petition to be unexhausted:

Grounds 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20 (except to the extent based on trial counsel's alleged failure to investigate witnesses Donnelly, Duncan and Catron), 21, 22, 23, 24(2) (except to the extent based on trial counsel's alleged failure to call Pam Metzger to testify), 24(3) (except to the extent based on trial counsel's alleged failure to encourage Moe to testify at trial), 24(4), 24(5), 24(6), 24(7), 24(8), 24(9) (except to the extent based on trial counsel's alleged failure to investigate witnesses Donnelly, Duncan and Catron), 24(10), 24(11), 24(12), 24(13), 24(14), 24(15), 24(16) (except to the extent based on trial counsel's alleged failure to offer at trial, as evidence, "the advertisement flyer showing sale jackets from Cabela's store and [the receipt from] Metzger's gambling tournament at Boomtown"), 24(17), 24(18), 24(19), 24(20), 24(21) (except to the extent based on trial counsel's alleged failure to "investigate the prosecutor's hearsay remarks regarding Game Stop contacting Cabela's about Pam Metzger selling videotapes stolen by Moe"), 24(22) (except to the extent based on trial counsel's alleged failure to object to "the prosecutor's hearsay remarks regarding Game Stop contacting Cabela's about Pam Metzger selling videotapes stolen by Moe," and to offer evidence that one of his prior convictions was the result of a trial at which he was not present), 24(23) (except to the extent based on trial counsel's alleged failure to object to "the prosecutor's hearsay remarks regarding Game Stop contacting Cabela's about Pam Metzger selling videotapes stolen by Moe"), 24(24) (except to the extent based on trial counsel's alleged failure to object to "the prosecutor's hearsay remarks regarding Game Stop contacting Cabela's about Pam Metzger selling videotapes stolen by Moe"), 24(25), 24(26) (except to the extent based on trial counsel's alleged failure to object "when the court ordered there were sixteen minutes left to finish the jury trial after the State's case"), 24(27), 24(28), 24(29), 24(30), 24(31), Ground 24(32) (except to the extent based on trial counsel's alleged failure to play "the videotape from Cabela's

security office to impeach Officer David Robertson's supplemental report," and to cross-examine Donnelly, Duncan, and Catron), 25 (except to the extent of Moe's exhausted claims), 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, and 44.

*See id*. With respect to Moe's unexhausted claims, the Court granted Moe an opportunity to make an election to: (1) abandon all the claims found by this Court to be unexhausted, (2) file a motion for a stay, requesting that this case be stayed while he exhausts his unexhausted claims, or (3) file a declaration stating that he wishes to voluntarily dismiss his entire habeas petition in this case without prejudice. *See id*. With regard to respondents' argument, in their motion to dismiss, that all Moe's claims are conclusory, and that some of Moe's claims are not cognizable in this federal habeas corpus action, the Court ruled that those arguments would be better addressed in conjunction with consideration of the merits of Moe's claims; the Court directed that respondents could assert those arguments in their answer. *See id*.

On July 30, 2015, Moe filed a motion for stay, requesting a stay of the action, to allow him to return to state court to exhaust his unexhausted claims (ECF No. 21). The Court denied that motion on December 2, 2016, ruling that Moe did not show good cause for his failure to exhaust his unexhausted claims in his earlier state-court proceedings. *See* Order entered December 2, 2016 (ECF No. 24). The Court then granted Moe another opportunity to abandon the unexhausted claims. *See id*. The Court warned that if Moe did not file a notice of abandonment of his unexhausted claims within the time allowed, this action would be dismissed, without prejudice, pursuant to *Rose v. Lundy*, 455 U.S. 509 (1982). *See id*.

On March 3, 2016, Moe filed a motion for reconsideration regarding the denial of his motion for stay (ECF No. 28). The Court denied that motion in an order entered April 12, 2016 (ECF No. 31). The Court granted Moe more time to abandon his unexhausted claims.

On May 18, 2016, Moe filed a motion to dismiss his unexhausted claims (ECF No. 32). The Court granted that motion on June 28, 2016, and dismissed Moe's unexhausted claims. *See* Order entered June 28, 2016 (ECF No. 35).

Also on May 18, 2016, Moe filed a motion for leave to amend his habeas petition, stating that he wished to amend to clarify his exhausted claims (ECF No. 33). The Court denied that motion on December 12, 2016. *See* Order entered December 12, 2016 (ECF No. 41). The Court ruled that Moe's proposed amended petition was improper in that it was incomplete in and of itself, and depended on reference to, and incorporation of, material in his original petition. *See* LR 15-1(a) ("The proposed amended pleading must be complete in and of itself without reference to the superseded pleading...."). The Court also determined that amendment was unnecessary; Moe acknowledged that he "[made] no attempt to change any claims." *See* Reply in Support of Motion for Leave to Amend (ECF No. 40), p. 2. Rather, Moe sought "only to clarify and supply the supporting facts and evidence to Petitioner's claims that were deemed exhausted by this Court." *Id*. Therefore, the Court concluded that the proposed amended petition was in the nature of a memorandum of argument in support of his exhausted claims. The Court denied Moe's motion for leave to amend his habeas petition, but ordered that it would consider the arguments in Moe's proposed amended petition (ECF No. 38), with respect to the merits of his exhausted claims.

Respondents then filed an answer on February 3, 2017 (ECF No. 42), and Moe filed a reply on June 12, 2017 (ECF No. 48).

Discussion

Standard of Review

28 U.S.C. § 2254(d) sets forth the standard of review applicable in this case under the Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing standard as "a difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

Grounds 20, 24(9) and 24(32)

In Ground 20, Moe claims he "was denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel when counsel failed to conduct any pretrial investigation on State's witnesses, and witnesses Petitioner requested to be investigated and called for trial." *See* Petition for Writ of Habeas Corpus (ECF No. 4), p. 11. In the June 25, 2015, order, the Court ruled that Moe exhausted this claim, in part, on the appeal in his state habeas action. *See* Order entered June 25, 2015 (ECF No. 20), p. 9. Specifically, the Court ruled that Moe exhausted this claim in state court to the extent that he claimed that his trial counsel was ineffective for failure to investigate witnesses Donnelly, Duncan, and Catron. *See id*. That part of Ground 20 is before the Court for resolution on its merits.

In Ground 24(9), Moe claims that he was denied his federal constitutional right to effective assistance of his trial counsel on account of trial counsel's failure "to investigate any of State's witnesses along with lying about availability of petitioner's witnesses." *See* Petition for Writ of Habeas Corpus, p. 23. In the June 25, 2015, order, the Court ruled that Moe exhausted this claim, on the appeal in his state habeas action, to the extent that he claims that his trial counsel was ineffective for failing to investigate witnesses Donnelly, Duncan, and Catron. *See* Order entered June 25, 2015, p. 12. That part of Ground 24(9), which is the same as Ground 20, is before the Court for resolution on its merits.

In Ground 24(32), Moe claims that he was denied his federal constitutional right to effective assistance of his trial counsel because "[t]rial counsel failed to call impeachment witnesses and failed to offer impeachment evidence to impeach the complaining witnesses." *See* Petition for Writ of Habeas Corpus, p. 25. In the June 25, 2015, order, the Court ruled that Moe exhausted this claim in state court with respect to his claim that his trial counsel "should have played the videotape from Cabela's security office to impeach Officer David Robertson's supplemental report," and should have cross-examined Donnelly, Duncan, and Catron. *See* Order entered June 25, 2015, p. 19. That part of Ground 24(32), too, is before the Court for resolution on its merits.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two prong test for analysis of claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state court has adjudicated a claim of ineffective assistance of counsel, under *Strickland*, establishing that the decision was unreasonable under AEDPA is especially difficult. *See Richter*, 562 U.S. at 104-05. In *Richter*, the Supreme Court instructed:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 994-95 (9th Cir. 2010) (acknowledging double deference required to state court adjudications of *Strickland* claims).

12

After holding an evidentiary hearing, the state district court ruled, as follows, on this claim:

> One of the claims is that trial counsel rendered ineffectiv3e assistance in failing to investigate to see if any of the other security officers or police officers would contradict the claim of one of the officers that Moe admitted that he entered the store with the intent to steal. This court finds that claim to be unproven because none of the witnesses has testified in a manner that contradicted the claim of retired Officer Robertson. Each witness claimed that they had no current recollection of what they had heard, related to the alleged admission or on any other subject. In addition, the claim is unproven because Chris Fortier [Moe's trial counsel] had a tactical reason for not investigating. He testified that the circumstances under which the evidence of the admission was generated allowed for impeachment and for the suggestion that it was fabricated. He evaluated the likelihood that some officers would contradict the one who claimed Moe made admissions, assumed it to be unlikely, based on his experience, and further evaluated the risk that the nature of the investigation would get back to the prosecutor. He further evaluated the perceived impeachment value of the single officer and made the tactical choice on how to proceed. The court finds that was a legitimate tactic and that Moe has failed to prove that the decision not to investigate was unreasonable. The court further finds that Moe has not shown that additional investigation would have yielded evidence that would have altered the outcome of the trial. Accordingly, the claim of ineffective assistance in failing to investigate or present additional evidence is denied.

Findings of Fact, Conclusions of Law and Order, Exhibit 124, pp. 3-4 (ECF No. 12-23, pp. 4-5).

The Nevada Supreme Court affirmed this ruling; in its order, the Nevada Supreme Court stated the following:

> [...] Moe contends that the district court erred by denying his claims that counsel was ineffective for failing to investigate and cross-examine witnesses to determine whether they heard him confess. Moe asserts that, if the witnesses heard him confess, counsel was ineffective for failing to question them regarding why the confession was not in their written reports, and if the witnesses did not hear him confess, counsel was ineffective for failing to present their testimony and video footage which would demonstrate that they would have heard the confession had it occurred. The district court denied these claims because it determined that counsel made a reasonable tactical decision not to investigate whether the witnesses heard the confession and Moe failed to demonstrate that the verdict would have otherwise been different. *See State v. Powell*, 122 Nev. 751, 759, 138 P.3d 453, 458 (2006) (tactical decisions must be supported by thorough investigations or "reasonable decisions that that particular investigations are unnecessary"); *Doleman v. State*, 112 Nev. 843, 848, 921 P.2d 278, 280-81 (1996) (an attorney's tactical decisions are virtually unchallengeable). The record supports these determinations, and we concluded that the district court did not err by denying these claims. *See* [*Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984)].

Order of Affirmance, Exhibit 138, p. 2 (ECF No. 13-12, p. 3).

1    The Nevada Supreme Court reasonably determined, upon the evidence presented at the

2    evidentiary hearing in the state habeas action, that Moe's trial counsel made a reasonable tactical

3    decision not to pursue an investigation into whether witnesses heard Moe's confession. *See*

4    Testimony of Chris Fortier, Transcript of Evidentiary Hearing, Exhibit 121, pp. 265-82 (ECF

5    No. 12-20, pp. 266-83).

6        Furthermore, Moe has made no showing that further investigation of Donnelly, Duncan or

7    Catron would have uncovered any information that could have been used to impeach any of the

8    State's witnesses. Nor has Moe made any showing that the videotape in question could have been

9    used to impeach any prosecution witness. Moe's assertions in these regards are speculative.

10       Moe has not shown that his trial counsel's performance was unreasonable, and, at any rate, he

11   has not shown that he was prejudiced. There is no showing that, had there been further investigation

12   of Donnelly, Duncan or Catron, there is a reasonable probability of a different outcome at trial.

13       The Nevada Supreme Court's denial of relief on these claims was not contrary to, or an

14   unreasonable application of, *Strickland*, or any other Supreme Court precedent. The Court will deny

15   Moe habeas corpus relief with respect to Grounds 20, 24(9) and 24(32).

16       Grounds 24(2) and 24(3)

17       In Ground 24(2), Moe claims that he was denied his federal constitutional right to effective

18   assistance of counsel on account of his trial counsel's failure to call certain witnesses to testify on his

19   behalf. *See* Petition for Writ of Habeas Corpus, p. 22. In the June 25, 2015, order, the Court ruled

20   that Moe exhausted this claim in state court with respect to Moe's claim that his trial counsel was

21   ineffective for failing to prepare, encourage, and subpoena Pam Metzger to testify. *See* Order

22   entered June 25, 2015, p. 10. That part of Ground 24(2) is before the Court for resolution on its

23   merits.

24       In Ground 24(3), Moe claims that he was denied his federal constitutional right to effective

25   assistance of counsel on account of his trial counsel's failure "to call and allow petitioner to testify in

26   motion to suppress hearing and at trial." *See* Petition for Writ of Habeas Corpus, p. 22. In the

June 25, 2015, order, the Court ruled that Moe exhausted this claim in state court to the extent he claims that his trial counsel was ineffective for failing to encourage him to testify at trial. *See* Order entered June 25, 2015, pp. 10-11. That part of Ground 24(3) is before the Court for resolution on its merits.

With regard to these claims, the Nevada Supreme Court ruled as follows:

> [...] Moe contends that the district court erred by denying his claims that counsel was ineffective for failing to prepare and encourage him and his girlfriend to testify. The district court denied these claims because it found credible counsel's testimony that Moe did not want either of them to testify and because it concluded that Moe failed to demonstrate that the verdict would have otherwise been different. The record supports the district court's determinations and we conclude that it did not err by denying these claims.

Order of Affirmance, Exhibit 138, p. 3 (ECF No. 13-12, p. 4).

The Nevada Supreme Court's ruling was reasonable in light of the evidence at the evidentiary hearing. Moe's trial attorney testified that Moe told him that he did not want him to call Metzger to testify. *See* Testimony of Chris Fortier, Transcript of Evidentiary Hearing, Exhibit 121, p. 291 (ECF No. 12-20, p. 292) ("I think the words were more like don't even consider putting Ms. Metz[g]er on the stand."). Metzger was on federal parole at the time, and she and Moe apparently believed that it would jeopardize her freedom if she testified for Moe. *See id*.

With regard to the question of Moe testifying on his own behalf, his trial attorney testified as follows at the evidentiary hearing:

> Q.      What do you recall about that?
>
> A.      I recall -- and I think I reviewed part of the transcript on this. I recall the Court making the *Phillips* charge instructing Mr. Moe that, in fact, he had the right to testify. And then I recall advising Mr. Moe very clearly that this was his decision, that this is the part of the trial, it is his choice of whether or not he wants to take the stand to testify, and he indicated that he did not want to testify.
>
> And from that point, after that, that's why I suggested to the Court, and Instruction Number 12 b3e provided to the jury because Instruction 1Number 12 is basically the *Allen*, or excuse me, the *Phillips* instruction.

1           Q.     Well, if Mr. Moe testified that when you went outside, you said to him
     "No, no, no, no. You will not testify" --

2

3           A.     That's totally erroneous.

4    Testimony of Chris Fortier, Transcript of Evidentiary Hearing, Exhibit 121, pp. 282-83 (ECF No.

5    12-20, pp. 283-84).

6           Moreover, Moe makes no showing that his testimony or Metzger's testimony would have had

7    any reasonable probability of changing the outcome of his trial.  *See* Findings of Fact, Conclusions of

8    Law and Judgment, Exhibit 124, pp. 4-5 (ECF No. 12-23, pp. 5-6).

9           The Nevada Supreme Court's denial of relief on these claims was not contrary to, or an

10   unreasonable application of, *Strickland*, or any other Supreme Court precedent.  The Court will deny

11   Moe habeas corpus relief with respect to Grounds 24(2) and 24(3).

12         Ground 24(16)

13          In Ground 24(16), Moe claims that he was denied his federal constitutional right to effective

14   assistance of his trial counsel because "[t]rial counsel failed to present evidence at motion to

15   suppress hearing, at trial, and during sentencing."  *See* Petition for Writ of Habeas Corpus, p. 23.  In

16   the June 25, 2015, order, the Court ruled that Moe exhausted this claim in state court with respect to

17   Moe's claim that his trial counsel was ineffective for failing to offer at trial, as evidence, "the

18   advertisement flyer showing sale jackets from Cabela's store and [the receipt from] Metzger's

19   gambling tournament at Boomtown."  *See* Order entered June 25, 2015, p. 14.  That part of Ground

20   24(16) is before the Court for resolution on its merits.

21          The Nevada Supreme Court ruled as follows regarding this claim:

22            [...]Moe contends that the district court erred by denying his claim that
            counsel was ineffective for failing to introduce evidence which would have supported

23          claims made in the opening statement that he did not enter the business with intent to
            steal.  Because the record demonstrates that this evidence, which consisted of a sales

24          advertisement and casino receipt, was not indicative of Moe's intent and would not
            have changed the outcome at trial, we conclude that the district court did not err by

25          denying this claim.

26   Order of Affirmance, Exhibit 138, p. 3 (ECF No. 13-12, p. 4).

The Nevada Supreme Court's ruling on this claim was reasonable in light of the evidence presented at the evidentiary hearing. It is not clear that the original sales advertisement that Moe claims to have carried into the store was available to be introduced as evidence, and, even if it were, the Nevada Supreme Court reasonably concluded that it would have shed little light on Moe's intentions when he entered the store. Similarly, evidence that Metzger was at a casino participating in a slot machine tournament, while Moe was in the Cabela's store, would have had little impact on the question of Moe's intentions when he entered the store. So, even if it could be determined that Moe's attorney acted unreasonably in not introducing these materials into evidence at trial -- a conclusion this Court does not reach -- Moe has not shown that such evidence would have had any reasonable probability of changing the outcome of his trial.

The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an unreasonable application of, *Strickland*, or any other Supreme Court precedent. The Court will deny Moe habeas corpus relief with respect to Ground 24(16).

Grounds 24(21), 24(22), 24(23) and 24(24)

Grounds 24(21), 24(22), 24(23) and 24(24) all relate to assertions made by the prosecution, at Moe's sentencing, to the effect that a Game Stop store contacted Cabela's about Metzger pawning video games that appeared to be from Cabela's.

In Ground 24(21), Moe claims that he was denied his federal constitutional right to effective assistance of his trial counsel because "[t]rial counsel failed to adequately review and investigate defendant's case." *See* Petition for Writ of Habeas Corpus, p. 24. In the June 25, 2015, order, the Court ruled that Moe exhausted this claim in state court with respect to his claim that his trial counsel was ineffective for failing to "investigate the prosecutor's hearsay remarks regarding Game Stop contacting Cabela's about Pam Metzger selling videotapes stolen by Moe." *See* Order entered June 25, 2015, p. 15. That part of Ground 24(21) is before the Court for resolution on its merits.

In Ground 24(22), Moe claims that he was denied his federal constitutional right to effective assistance of his trial counsel because "[t]rial counsel failed to present evidence and to object to

evidence during sentencing that would of made habitual sentence improper sentence." *See* Petition for Writ of Habeas Corpus, p. 24. In the June 25, 2015, order, the Court ruled that Moe exhausted this claim in state court with respect to his claim that his trial counsel was ineffective for failing to object to "the prosecutor's hearsay remarks regarding Game Stop contacting Cabela's about Pam Metzger selling videotapes stolen by Moe." *See* Order entered June 25, 2015, pp. 15-16. That part of Ground 24(22) is before the Court for resolution on its merits.

In Ground 24(23), Moe claims that he was denied his federal constitutional right to effective assistance of his trial counsel because "[t]rial counsel failed to object to improper statements by prosecuting attorney during voir dire questioning, trial, and sentencing." *See* Petition for Writ of Habeas Corpus, p. 24. In the June 25, 2015, order, the Court ruled that Moe exhausted this claim in state court with respect to his claim that his trial counsel was ineffective for failing to object to "the prosecutor's hearsay remarks regarding Game Stop contacting Cabela's about Pam Metzger selling videotapes stolen by Moe." *See* Order entered June 25, 2015, p. 16. That part of Ground 24(23) is before the Court for resolution on its merits.

In Ground 24(24), Moe claims that he was denied his federal constitutional right to effective assistance of his trial counsel because "[t]rial counsel failed to object to improper commentary by prosecuting attorney during opening statements, and during closing arguments, and during sentencing." *See* Petition for Writ of Habeas Corpus, p. 24. In the June 25, 2015, order, the Court ruled that Moe exhausted this claim in state court with respect to his claim that his trial counsel was ineffective for failing to object to "the prosecutor's hearsay remarks regarding Game Stop contacting Cabela's about Pam Metzger selling videotapes stolen by Moe." *See* Order entered June 25, 2015, pp. 16-17. That part of Ground 24(24) is before the Court for resolution on its merits.

The comments of the prosecutor, at the sentencing, that are the subject of these claims were the following:

> Now, the Court may ask what difference does it make and why do we care that the defendant is stealing video games? What I can inform you is this. My investigator has done some work, and I actually spoke to Mr. Catron, who you remember from the trial was the store security at Cabela's. Cabela's had been

1   contacted because -- had been contacted by Game Stop which is a local video game
    store, and the reason Cabela's was contacted was that there was a woman by the name
2   of Pamela [Metzger] who was pawning an awful lot of video games from Cabela's.
    Now, how does that all tie into the defendant? Some of the letters that you have
3   received are from Pamela [Metzger].

4                                           *    *    *

5   [...] Pamela [Metzger] is the one who's pawning the video games at local game stores
    that the defendant is stealing, so his name is not associated at the Game Stop, hers is.
6   So we've got a man who, basically, is either creating his only income or
    supplementing whatever income he has by stealing from local businesses, giving
7   those, the fruits of that theft to somebody else, and laundering it through local video
    game stores.
8

9   Transcript of Sentencing, Exhibit 38, pp. 39-40 (ECF No. 9-12, pp. 40-41).

10          The Nevada Supreme Court ruled, as follows, regarding Moe's claim that his counsel was

11  ineffective with respect to his handling of these comments by the prosecutor:

12              [...] Moe contends that the district court erred by denying his claim that
            counsel was ineffective for failing to object, investigate, and move for a continuance
13          after the prosecutor suggested at sentencing that Moe's friend planned to sell the
            stolen merchandise. The district court found credible counsel's testimony at the
14          evidentiary hearing that he did not think an objection was warranted and his strategy
            was to focus on the stale and nonviolent nature of Moe's prior convictions. Moe fails
15          to demonstrate that his sentence would have otherwise been different. We conclude
            that the district court did not err by denying this claim.
16

17  Order of Affirmance, Exhibit 138, pp. 4-5 (ECF No. 13-12, pp. 5-6).

18          This ruling by the Nevada Supreme Court was reasonable. The assertion that Moe planned to

19  sell the stolen merchandise, perhaps with Metzger's help, was not surprising, and added little, if

20  anything, to the prosecution's case at the sentencing. Then Nevada Supreme Court reasonable

21  concluded that Moe's counsel made a legitimate strategic decision to forego an objection to these

22  comments, and to focus on the nature of Moe's prior convictions. *See* Testimony of Chris Fortier,

23  Transcript of Evidentiary Hearing, Exhibit 121, pp. 293-94 (ECF No. 12-20, pp. 294-95).

24          The Nevada Supreme Court's denial of relief on these claims was not contrary to, or an

25  unreasonable application of, *Strickland*, or any other Supreme Court precedent. The Court will deny

26  Moe habeas corpus relief with respect to Grounds 24(21), 24(22), 24(23) and 24(24).

                                            19

The Other Exhausted Part of Ground 24(22)

2          Again, in Ground 24(22), Moe claims that he was denied his federal constitutional right to

3  effective assistance of his trial counsel because "[t]rial counsel failed to present evidence and to

4  object to evidence during sentencing that would of made habitual sentence improper sentence." *See*

5  Petition for Writ of Habeas Corpus, p. 24.  In the June 25, 2015, order, the Court ruled that Moe also

6  exhausted this claim in state court with respect to his claim that his trial counsel was ineffective for

7  failing to offer evidence at the sentencing that one of his prior convictions was the result of a trial at

8  which he was not present. *See* Order entered June 25, 2015, pp. 15-16.  That part of Ground 24(22)

9  is also before the Court for resolution on its merits.

10          The Nevada Supreme Court denied relief on this claim without discussion.  This Court finds

11  that ruling to be reasonable.  Moe has made no showing that he was convicted in absentia of the

12  felony auto theft in Minnesota, or, for that matter, that, if he was, it was unconstitutional, or

13  otherwise impermissible for the trial court to consider the conviction under Nevada's habitual

14  criminal statute.  Therefore, there is no showing that Moe's counsel performed unreasonably with

15  regard to this prior conviction, or that Moe was prejudiced.  The Nevada Supreme Court's denial of

16  relief on this claim was not contrary to, or an unreasonable application of, *Strickland*, or any other

17  Supreme Court precedent.  The Court will deny Moe habeas corpus relief with respect to this part of

18  Ground 24(22).

19          Ground 24(26)

20          In Ground 24(26), Moe claims that he was denied his federal constitutional right to effective

21  assistance of his trial counsel because "[t]rial counsel failed to object to judicial misconduct and

22  judicial abuse of discretion during motion to suppress hearing, trial, and during sentencing." *See*

23  Petition for Writ of Habeas Corpus, p. 24.  In the June 25, 2015, order, the Court ruled that Moe

24  exhausted this claim in state court with respect to his claim that his trial counsel was ineffective for

25  failing to object "when the court ordered there were sixteen minutes left to finish the jury trial after

26

the State's case." *See* Order entered June 25, 2015, p. 17. That part of Ground 24(26) is before the Court for resolution on its merits.

The comment of the trial judge that Moe claims should have prompted an objection from his trial counsel was the following, during the testimony of Officer David Robertson, who was the prosecution's last witness:

> THE COURT: All right. Next question. Let's go. We've got 16 minutes for the trial.

Trial Transcript, Exhibit 23, p. 267 (ECF No. 8-23, p. 268).

At the evidentiary hearing in Moe's state habeas action, Moe testified that when the judge made that comment, he looked at his watch and saw that it was "16 minutes to five." *See* Transcript of Evidentiary Hearing, Exhibit 121, p. 108 (ECF No. 12-20, p. 109). At the evidentiary hearing, Moe's trial counsel was asked how he understood the Court's comment, and he responded, "[t]hat meant we had 16 minutes left for the rest of the day." *Id*. at 285 (ECF No. 12-20, p. 286). He testified that he thought he "could have gone into the next day if [he] thought it was warranted." *Id*. He testified further:

> Despite the Court saying to me we have 16 minutes left, if Mr. Moe would have said to me, you know, I want to testify here, and I felt as though that that's what he had to do, and even though the Court said to me we have 16 minutes left, I would have put on the record and addressed the Court that Mr. Moe wants to testify and we need more time.

*Id*. at 285-86 (ECF No. 12-20, pp. 286-87). In response to a question whether it occurred to counsel that the court's comment meant that he would not have an opportunity to present Moe's testimony, Moe's trial counsel responded, "No." *Id*. at 288-89 (ECF No. 12-20, pp. 289-90).

After holding the evidentiary hearing, the state district court ruled as follows on this claim:

> Several of the claims are based on the notion that the defense was given only 16 minutes to present their case. That claim is false. Fortier [Moe's trial counsel] testified that he was aware that there was no hard deadline and that if he had additional evidence, it would be heard. Indeed, the record reveals that the trial went on beyond the end of the usual work day and that all who were present were aware that the court did not arbitrarily impose a deadline for the end of the trial. The suggestion that this court meant that it would exclude evidence is incorrect. Therefore, each of the many claims for relief that are based on the notion that this

1  court imposed a deadline, and that the deadline affected the presentation of evidence,
   are denied.
2

3  Findings of Fact, Conclusions of Law and Order, Exhibit 124, p. 5 (ECF No. 12-23, p. 6). The

4  Nevada Supreme Court, affirmed this ruling, as follows:

5          [...] Moe contends that the district court erred by denying his claims that
        counsel was ineffective for failing to object or request a continuance regarding the
6        district court's order that there were only sixteen minutes left of trial and for
        presenting a minimal defense to comply with the court's order. The district court
7        denied these claims because it found credible counsel's testimony that he4 understood
        the district court's comment to refer to the time left in the day, he did not feel
8        constrained by the comment, and he would have presented more evidence had he
        deemed it necessary. We conclude that the district court did not err by denying these
9        claims.

10  Order of Affirmance, Exhibit 138, pp. 2-3 (ECF No. 13-12, pp. 3-4).

11         The state supreme court's ruling was reasonable. The testimony at the evidentiary hearing

12  supports the conclusion that the trial court did not limit the time the defense had to present its case.

13  There was nothing objectionable about the trial court notifying counsel that there were only sixteen

14  minutes left for trial proceedings on that day. Moe's counsel did not perform unreasonably in not

15  objecting to the comment, and Moe was not prejudiced. The Nevada Supreme Court's denial

16  of relief on this claim was not contrary to, or an unreasonable application of, *Strickland*, or any

17  other Supreme Court precedent. The Court will deny Moe habeas corpus relief with respect to

18  Ground 24(26).

19         Ground 25

20         Finally, in Ground 25, Moe claims that his federal constitutional rights were violated as a

21  result of cumulative error. *See* Petition for Writ of Habeas Corpus, p. 33. In the June 25, 2015,

22  order, the Court ruled that Moe exhausted this claim to the extent that it incorporates Moe's other

23  exhausted claims. *See* Order entered June 25, 2015, p. 19. To that extent, then, Ground 25 is before

24  the Court for resolution on its merits.

25         Whether considered individually or cumulatively, Moe has not shown that any error of his

26  trial counsel prejudiced him. There is no "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466

U.S. at 688, 694. The Court will deny Moe habeas corpus relief with respect to Ground 25.

Certificate of Appealability

The standard for issuance of a certificate of appealability calls for a "substantial showing

of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Supreme Court has interpreted

28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the
> showing required to satisfy § 2253(c) is straightforward: The petitioner must
> demonstrate that reasonable jurists would find the district court's assessment of the
> constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79

(9th Cir. 2000). The Supreme Court further illuminated the standard in *Miller-El v. Cockrell*,

537 U.S. 322 (2003). The Court stated in that case:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists
> would grant the petition for habeas corpus. Indeed, a claim can be debatable even
> though every jurist of reason might agree, after the COA has been granted and the
> case has received full consideration, that petitioner will not prevail. As we stated in
> *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the
> showing required to satisfy § 2253(c) is straightforward: The petitioner must
> demonstrate that reasonable jurists would find the district court's assessment of the
> constitutional claims debatable or wrong."

*Miller-El*, 537 U.S. at 338 (quoting *Slack*, 529 U.S. at 484). The Court has considered all of Moe's

claims with respect to whether they satisfy the standard for issuance of a certificate of appeal, and

determine that none of them do. The Court will deny Moe a certificate of appealability.

**IT IS THEREFORE ORDERED** that, pursuant to Federal Rule of Civil Procedure 25(d),

the Clerk of the Court shall substitute Jo Gentry for Brian E. Williams, Sr., on the docket for this

case, as the respondent warden, and shall update the caption of the action to reflect this change.

**IT IS FURTHER ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 4) is

**DENIED**.

1    **IT IS FURTHER ORDERED** that petitioner is denied a certificate of appealability.

2    **IT IS FURTHER ORDERED** that the Clerk of the Court shall **ENTER JUDGMENT**

3 **ACCORDINGLY**.

4

5    Dated this  20th day of October, 2017.

6

7    _____

8                       UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

24